# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

RANDALL T. SELLARS,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO.: 2:17-cv-31

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Richard Furcolo ("the ALJ" or "ALJ Furcolo") denying his claim for a period of disability and disability insurance benefits. (Doc. 1.) Plaintiff urges the Court to reverse the ALJ's decision and award him benefits, or in the alternative, for other relief as may be deemed appropriate. Defendant asserts the Commissioner's decision should be affirmed. (Doc. 9.) For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case.

## **BACKGROUND**

On January 15, 2013, Plaintiff protectively filed Title II applications for a period of disability and disability insurance benefits, alleging disability beginning on June 24, 2011. (Doc. 10-2, p. 16.) After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On January 21, 2015, a video hearing was held by ALJ William Davenport. On November 3, 2015, ALJ Furcolo held a supplemental video hearing at which

Plaintiff, represented by counsel, appeared and testified in Brunswick, Georgia, while the ALJ presided over the hearing in Savannah, Georgia. Kenneth L. Bennett, a vocational expert, also appeared at the hearing. (Id.) ALJ Furcolo found that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301 *et seq.* (the "Act"). (Id. at p. 25.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Id. at pp. 2–3.)

Plaintiff, born on July 21, 1961, was fifty-four (54) years old when ALJ Furcolo issued his final decision. (Id. at p. 24.) Plaintiff has a high school education and has obtained a college degree. (Id. at pp. 24, 78.) Further, he has relevant past work experience as a retail store manager and insulation supervisor. (Id. at p. 23.)

## DISCUSSION

### I. The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments as defined by the "severity regulation." 20 C.F.R. §§ 404.1520(c), 416.920(c); Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is considered severe, then the evaluation proceeds to Step Three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations ("the Regulations") and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step. At Step Four, a determination is made as to whether the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013) (per curiam). A claimant's RFC "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Stone, 503 F. App'x at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able adjust to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239.

Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, ALJ Furcolo followed this sequential process to determine that Plaintiff has not engaged in substantial gainful activity since June 24, 2011, the alleged onset date. (Doc. 10-2, p. 18.) At Step Two, the ALJ determined that Plaintiff's idiopathic pulmonary arterial hypertension, primary pulmonary hypertension, and systemic hypertension were considered "severe" under the "severity regulation." (Id. at pp. 18–19 (citing 20 C.F.R. § 404.1520(c)).) At the next step, the ALJ determined that none of Plaintiff's medically determinable impairments or combination of impairments met or medically equaled a listed impairment under the Regulations. (Id. at p. 19 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).)

In determining Plaintiff's RFC, ALJ Furcolo found that he could perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). (Id. at pp. 19–23.) Physical examinations of Plaintiff were "unremarkable" and Plaintiff's symptoms are "well-controlled," but given Plaintiff's pulmonary arterial hypertension, as substantiated by the evidence of record, the ALJ concluded that Plaintiff's medical condition "ultimately limits [him] to sedentary exertion." (Id. at p. 21.) A sedentary work profile limits Plaintiff to "lifting no more than 10 pounds at a time and occasionally lifting or carrying" things like files and small tools; this work profile involves sitting but also occasional walking and standing. 20 C.F.R. § 404.1567(a). Based on the evidence submitted, ALJ Furcolo found Plaintiff fully capable of sedentary work and declined to add further limitations. (Doc. 10-2, pp. 19–23.)

At Step Four, the ALJ found Plaintiff unable to perform his past relevant work as a retail store manager or insulation supervisor because both jobs exceeded the sedentary exertional level.

(Id. at pp. 23–24.)  However, considering Plaintiff's age, education, work experience, and RFC, ALJ Furcolo concluded at the fifth and final step that Plaintiff could perform the occupation of telephone solicitor, a job compatible with sedentary exertion that exists in significant numbers in the national economy.  (Id. at pp. 24–25.)

## II.     Issues Presented

Plaintiff contends the ALJ failed at Step Three to apply the correct Social Security standards and regulations, specifically as to his finding that Plaintiff's condition did not meet or equal a listed condition under the Regulations.  (Doc. 12, p. 2; Doc. 13, p. 1.)  Plaintiff also contends that the ALJ's decision was contrary to the substantial evidence, specifically as to the weight ALJ Furcolo afforded the opinions of the examining medical consultant, treating physician, and nurse practitioner.  (Id.)

## III.    Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496

F.3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## IV. Whether Substantial Evidence Supports the ALJ's Finding that Plaintiff Did Not Meet a Listed Impairment

Plaintiff argues ALJ Furcolo wrongfully concluded that his pulmonary hypertension condition was not a listed severe impairment at Step Three. (Doc. 12, pp. 2–3.) Plaintiff implies the ALJ only considered Listing 4.00 Cardiovascular Disorders and no other possible Listings. (Id.) Plaintiff contends that his heart condition meets Listing 3.09 for cor pulmonale[1] because his hypertension has a "mean pulmonary artery pressure greater than 40 mm Hg," as required by that Listing. (Id. at p. 3; see also Doc. 14.) Plaintiff includes several citations to the medical record that ostensibly show his artery pressure has been greater than 40 mm Hg at all relevant times. (Doc. 12, pp. 3, 6.) Thus, Plaintiff argues that the ALJ abused his discretion in finding Plaintiff's condition did not meet a listed impairment.

Defendant argues substantial evidence supports the ALJ's finding that Plaintiff's pulmonary hypertension did not meet Listing 3.09. Defendant also argues that Plaintiff has failed to show his condition meets all of the necessary criteria to qualify under Listing 3.09. (Doc. 13, pp. 4–7.) Specifically, Defendant contends that Plaintiff lacks clinical evidence of a mean pulmonary artery pressure greater than 40 mm Hg and that evidence from Plaintiff's treating physician indicate he does not have cor pulmonale. (Id. at p. 5.) Thus, Defendant

---

[1] A cor pulmonale is a "right ventricular enlargement secondary to a lung disorder that causes pulmonary artery hypertension" followed by right ventricular failure. Sanjiv J. Shah, MD, Cor Pulmonale, The Merck Manual, http://www.merckmanuals.com/professional/cardiovascular-disorders/heart-failure/cor-pulmonale (last revised March 2017).

contends Plaintiff does not have relevant and conclusive evidence of cor pulmonale, despite his pulmonary arterial hypertension diagnosis. (Doc. 15.)

A claimant must provide specific evidence—such as medical signs, symptoms, or laboratory-test results—showing that his impairment meets or medically equals a listed impairment to be presumed disabled at Step Three. Sullivan, 493 U.S. at 530; see Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (claimant bears the burden to establish the existence of his impairment). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Arrington v. Soc. Sec. Admin., 358 F. App'x 89, 93 (11th Cir. 2009) (per curiam) (citing Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). Thus, to meet a listing, "a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citations omitted).

The ALJ's finding as to whether a claimant does or does not meet a listed impairment need not be explicit and may be implied from the record. Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding the ALJ implicitly found the claimant did not meet a listing because it was clear from the record that the ALJ had considered the relevant law and evidence). Furthermore, although the ALJ must consider the Listings in making his disability determination, he is not required to recite mechanically the evidence leading to his ultimate determination. Bellew v. Acting Comm'r of Soc. Sec., 605 F. App'x 917, 920 (11th Cir. 2015) (per curiam) (citation omitted).

To meet Listing 3.09 for "[c]or pulmonale secondary to chronic pulmonary vascular hypertension," a claimant must provide (1) clinical evidence of cor pulmonale with (2) either a mean pulmonary artery pressure greater than 40 mm Hg or arterial hypoxemia. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.09. The clinical evidence requirement mandates evidence of right ventricular overload or failure, which can be documented by signs and laboratory findings of an early diastolic right sided gallop on auscultation, neck vein distension, and cardiac catheterization, among other methods. Id. §§ 3.09, 3.00G. A claimant must also show clinical evidence of the required mean artery pressure greater than 40 mm Hg or clinical evidence of deficient oxygenation in the arteries as measured by the levels or carbon dioxide and oxygen pressure in the blood. Id. §§ 3.09B, 3.09C, 3.02C2; see also id. § 4.02 (providing the applicable chronic heart failure criteria by which to further evaluate cor pulmonale).

Substantial evidence supports the ALJ's determination that Plaintiff's heart condition did not meet or equal a listed impairment and that Plaintiff failed to carry his burden in establishing the existence of a listed impairment under the Regulations. In attempting to carry his burden, Plaintiff points to thirteen instances in the record to argue he had a mean pulmonary artery pressure greater than 40 mm Hg during the relevant period, (doc. 12, pp. 3, 6), but the Court's review of these records belie Plaintiff's assertion. As noted by Defendant, six of Plaintiff's records rely on diagnostics from before Plaintiff's alleged onset date, all of which reference April 2010 catheterization results.[2] (See Doc. 10-7, pp. 7, 10, 13, 31, 71, 81.) Moreover, Plaintiff incorrectly points to April 16, 2010 catheterization results that show a mean pulmonary

---

[2] In addition to being prior to Plaintiff's alleged onset date of June 24, 2011, the April 18, 2010 results seem to contradict Plaintiff's assertion that they show he has the requisite threshold mean pulmonary artery pressure of greater than 40 mm Hg. (See Doc. 10-7, p. 31 (documenting a systolic pulmonary artery pressure of 87 mm Hg but a pulmonary capillary wedge pressure mean of 6 mm Hg and a right atrial pressure mean of 0 mm Hg)). Nothing in this record indicates any mean pressure above the threshold amount.

artery pressure of 40 mm Hg,[3] (doc. 10-7, pp. 7, 10, 13, 71, 81), when Listing 3.09 requires a mean pressure "greater than 40 mm Hg," 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.09.

The seven other medical records Plaintiff points to in support of his Listing 3.09 claim are similarly misplaced. Two of the records do not provide any information regarding Plaintiff's mean pulmonary artery pressure. (Doc. 10-7, pp. 49–50, 68.) The remaining five records that Plaintiff advances in support of his mean pulmonary artery pressure assertion do not suggest a <u>mean</u> pressure greater than the threshold requirement of 40 mm Hg. The December 11, 2013 record documents only a pulmonary artery pressure ("PAP") of 50 mm Hg with no indication as to whether the pressure indicated was a mean figure. (<u>Id.</u> at p. 82.) To be sure, the other records cited to by Plaintiff do indeed document a <u>systolic</u> artery pressure of greater than 40 mm Hg, (<u>id.</u> at pp. 16, 18, 74, 79), but they fail to establish the requisite <u>mean</u> pulmonary artery pressure of greater than 40 mm Hg. Systolic artery pressure is not the same as mean artery pressure:

> [Mean pulmonary artery pressure] reflects the steady component of flow and the functional status of the distal (resistive) pulmonary veasculature, while [systolic pulmonary artery pressure] is expected to encompass the pulsatile component of arterial load, which includes the characteristics of right ventricular ejection and the characteristics of the proximal (elastic) pulmonary arteries and wave reflections.

Chemla et al., <u>New Formula for Predicting Mean Pulmonary Artery Pressure Using Systolic Pulmonary Artery Pressure</u>, 126 Chest Journal 1313, 1314 (2004) (footnotes omitted).

In this case, Plaintiff has failed to present evidence of a mean pulmonary artery pressure exceeding 40 mm Hg. Likewise, Plaintiff has failed to present evidence or argument showing he suffers from arterial hypoxemia. Finally, Plaintiff fails to show the initially required clinical evidence of cor pulmonale that must exist prior to consideration of mean pulmonary artery

---

[3] In his Reply Brief, Plaintiff strives to show these records are timely to the alleged onset date, but each record, while being within the alleged onset date, clearly states that the artery pressure documented therein is from April 2010. (<u>See</u> Doc. 10-7, pp. 7, 10, 13, 71, 81.)

pressure or arterial hypoxemia. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 3.09, 3.00G. Although Plaintiff correctly states that under the Regulations "evidence of florid right heart failure need not be present at the time of adjudication for a Listing (e.g., 3.09) to be satisfied, but the medical evidence of record should establish that cor pulmonale is chronic and irreversible."[4] (Doc. 14, p. 2 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 3.00G.)). Plaintiff points to no medical evidence of record that establishes he has chronic and irreversible cor pulmonale. In fact, Plaintiff's own treating physician, Dr. Michael Butler, indicated just the opposite when he marked "N/A" to a February 11, 2013 respiratory questionnaire which asked for EKG tracings and chest x-rays showing cor pulmonale and other signs of congestive heart failure. (Doc. 10-7, p. 48.) Thus, Plaintiff failed to carry his burden to establish a condition under the Listings.

Furthermore, substantial evidence supports ALJ Furcolo's determination that Plaintiff does not have an impairment that meets or medically equals the severity of one of the listed impairments. The ALJ considered Plaintiff's severe pulmonary hypertension in light of the entire record, including the opinions of the State agency medical consultants on this issue, and reasonably concluded that Plaintiff did not have an impairment under the Listings. (Doc. 10-2, p. 19.) After two separate examinations, State medical consultants considered whether Plaintiff's medical condition met a listed impairment and determined he was not disabled. (Doc. 10-3, pp. 5, 9, 15, 19.) No acceptable medical source opined that Plaintiff meets or medically equals a listing, (doc. 10-2, p. 19), and Plaintiff points to none is his Complaint or Briefs, (see docs. 1, 12, 14). Moreover, ALJ Furcolo expressly considered several of Plaintiff's medical records, including one that Plaintiff supportively cites to in his Brief, (doc. 12, p. 6 (citing doc.

---

[4] Following this statement, Plaintiff cites to a December 30, 2014 record, (doc. 10-7, p. 68), but this opinion letter from Dr. Stephen A. Chitty does not mention cor pulmonale, much less show that Plaintiff has chronic and irreversible cor pulmonale. While Dr. Chitty stated that Plaintiff "suffers from severe idiopathic pulmonary arterial hypertension," (id.), the ALJ found the same and considered that impairment in making his determination under the Listings, (doc. 10-2, pp. 18–19).

10-7, p. 74)), and concluded that he did not meet Listing 4.02 for chronic heart failure or "any of the listed impairments." (Doc. 10-2, p. 19.) These records support the ALJ's determination as to Listing 4.02, because they show Plaintiff's heart to be in a functioning capacity.[5] Thus, it is clear ALJ Furcolo had substantial support in the evidence in determining that Plaintiff's severe impairments did not qualify under the Listings.

Accordingly, the ALJ's determination that Plaintiff's idiopathic pulmonary arterial hypertension, primary pulmonary hypertension, systemic hypertension, and other impairments did not meet or medically equal a listed impairment was proper, and Plaintiff's enumeration of error is without merit.

## V. Whether the ALJ Properly Considered and Weighed the Opinions of the Examining Medical Consultant, Treating Physician, and Nurse Practitioner

Plaintiff argues that ALJ Furcolo abused his discretion in assigning little weight to the opinions of three medical professionals: (1) the Social Security Administration's Consultative Examiner, Dr. Mukesh Agarwal; (2) Plaintiff's long-term treating physician, Dr. Stephen A. Chitty; (3) and nurse practitioner Vicky Alday, a witness at the hearing. (Doc. 12, p. 3.) Plaintiff contends the ALJ should not have discounted Dr. Agarwal's opinion because he was the Commissioner's expert, improperly considered Plaintiff's testimony in discounting Dr. Chitty's opinion, and wrongly gave little weight to Ms. Alday's opinion simply because she was not an acceptable medical source. (Id. at pp. 4–5.)

Defendant argues that ALJ Furcolo properly considered and weighed the opinions of each of these experts. (Doc. 13, pp. 8–10.) Further, Defendant contends the ALJ's reasons for

---

[5] To the extent Plaintiff contests the ALJ's conclusion at Step Three because he did not specifically discuss Listing 3.09, the Regulations do not require ALJs to discuss all potentially applicable listings. See Tuberville v. Astrue, 316 F. App'x 891, 893 (11th Cir. 2009) ("though the ALJ did not explicitly discuss why claimant did not actually meet the Listing] substantial record evidence supports [that claimant did not meet the Listing]"); Hutchison, 787 F.2d at 1463 (conclusions regarding listed impairments can be implied from the record).

discounting these experts were supported by substantial evidence and were appropriate in light of applicable legal standards. (Id. at pp. 10–15.) In this case, the Court finds ALJ Furcolo properly considered and weighed the opinions of each discounted expert Plaintiff challenges.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in original) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). The opinions of non-treating doctors, such as a one-time examiner, or from non-acceptable medical sources, such as a chiropractor, are not entitled to deference or special consideration.[6] See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) (citations omitted). However, "the law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).

"Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" Winschel, 631 F.3d at 1179 (quoting Phillips, 357 F.3d at 1241). "The ALJ has wide latitude to determine what weight to assign to those opinions, so long as he operates within the regulatory and judicial frameworks." Zanders v. Colvin, No. CV412-182, 2013 WL 4077456, at *5 (S.D. Ga. Aug. 12, 2013). An ALJ

---

[6] A doctor is not a treating doctor if the claimant's relationship with the doctor arises from the claimant's need to obtain a report to support his claim for disability, rather than from the claimant's need for medical care. 20 C.F.R. § 404.1502 (2013). The Court cites to the 2013 version of this code section because Plaintiff filed for benefits that year and this code section has recently undergone substantial revision with respect to treating physicians. See 20 C.F.R. § 404.1502 (2018).

is not obligated to agree with a medical opinion if the evidence of record tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (citations omitted). "For instance, when discounting a medical opinion, he should consider several factors, including the examining relationship, the treatment relationship, the doctor's specialization, whether the opinion is amply supported, and whether the opinion is consistent with the record." Id. (citing 20 C.F.R. §§ 404.1527(c) & 416.927(c)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel, 631 F.3d at 1179 (citation omitted). Failure to "clearly articulate the reasons for giving less weight to the opinion of a treating physician" is "reversible error." Lewis, 125 F.3d at 1440 (citation omitted).

### A. Consultative Examiner Dr. Mukesh Agarwal

ALJ Furcolo did not err in assigning little weight to Dr. Agarwal's opinion that Plaintiff has difficulty sustaining any exertion. (Doc. 10-2, p. 23 (citing Doc. 10-10, p. 42).) Although Plaintiff argues the ALJ abused his discretion solely by affording little weight to the Commissioner's "independent" and "unbiased" consultative examiner, (doc. 12, p. 3–4), he offers no support for this assertion of error. The opinions of a consultative examiner such as Dr. Agarwal, who was not a treating doctor and only saw Plaintiff once, are not entitled to any level of deference or special consideration, regardless of his role as the Commissioner's unbiased examiner. 20 C.F.R. § 404.1502 (2013); see Crawford, 363 F.3d at 1160. Furthermore, the ALJ had substantial evidence, in the form of multiple inconsistencies, by which to discount Dr. Agarwal's conclusion that Plaintiff would be essentially incapable of sedentary work activity on a sustained basis. (Doc. 10-2, pp. 42, 44.)

First, Dr. Agarwal's opinion was inconsistent with his physical examination of Plaintiff, which showed a normal gait, full range of motion, and full strength in all muscle groups. (Id. at

13

p. 23 (citing 10-10, p. 6 (also noting Plaintiff is able to "walk . . . without much difficulty," and able to "reach, push, pull, and grasp to carry out activities of daily living," even though he gets short of breath)).) Second, Dr. Agarwal's opinion was inconsistent with Plaintiff's reported activities of doing daily chores, biking, walking one mile, and walking his dog.[7] (Id.) Third, Dr. Agarwal's opinion was internally inconsistent, as it limited Plaintiff to not lifting more than ten pounds but permitted occasional lifting of twenty pounds. (Id. (citing 10-10, pp. 7–8).) Finally, although Dr. Agarwal found Plaintiff able to lift between ten and twenty pounds, he contradictorily concluded Plaintiff would have "difficulty sustaining any exertion." (Id. quoting 10-10, p. 7).) Inconsistencies such as these provide substantial evidence for ALJ Furcolo to discredit Dr. Agarwal's opinion that Plaintiff would be unable to sustain any level of exertion, notwithstanding Dr. Agarwal's role as an independent consultative examiner appointed by the Commissioner. See Winschel, 631 F.3d at 1179. Accordingly, Plaintiff's enumeration of error as to the level of weight the ALJ afforded to Dr. Agarwal's opinion is without merit.

### B. Treating Physician Dr. Stephen A. Chitty

ALJ Furcolo did not err in assigning little weight to Dr. Chitty's opinion that Plaintiff is "completely disabled" and "unable to work in any capacity." (Doc. 10-2, p. 23 (citing 10-8, p. 5).) As an initial matter, it should be noted that Dr. Chitty's opinion on Plaintiff's "disability" status is an issue left for the Commissioner's determination. 20 C.F.R. § 404.1527(d)(3); SSR 96-5p (2013).[8] Plaintiff contends the ALJ's comparison of Plaintiff's reported daily activities to Dr. Chitty's opinion was improper and was thus made in error, but Plaintiff cites no support for this proposition. (Doc. 12, p. 4.) To the contrary, the regulations and case law allow an ALJ to

---

[7] (See Doc. 10-2, pp. 86–88 (Plaintiff's testimony about his daily activities); Doc. 10-7, p. 65 (same).)

[8] SSR 96-5p was rescinded in January 2017 but was in effect for Plaintiff's claim. See 82 Fed. Reg. 5844 (Jan. 18, 2017).

take daily activities into consideration when weighing an expert opinion. Phillips, 357 F.3d at 1241 (holding the ALJ properly discounted a treating physician's opinions based in part on the claimant's reported activities); Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding the ALJ properly determined ability to perform work based in part on the claimant's activities); see 20 C.F.R. § 404.1527(c)(4) (opinions must be weighed against the record as a whole).

Moreover, ALJ Furcolo provided further explanation in affording little weight to Dr. Chitty's opinion. He noted that Dr. Chitty's conclusion was contrary to the examinations provided by other doctors, "which were generally unremarkable with respect to the cardiovascular and respiratory systems." (Doc. 10-2, p. 23.) The ALJ also found that Dr. Chitty's failure to provide a function-by-function assessment undermined the veracity of his opinion. (Id.) And, as indicated above, ALJ Furcolo found Dr. Chitty's opinion as to Plaintiff being disabled contrary to Plaintiff's reported daily activities—"driving, grocery shopping, cycling, gardening, and walking his dog," (id.)—which is a proper basis for affording less weight to a treating physician's opinion. Thus, the ALJ had "good cause" to discount Dr. Chitty's opinion as one of Plaintiff's treating physicians. See Winschel, 631 F.3d at 1179 ("good cause" exists when evidence is lacking, contradictory, or the opinion conclusory). As required by law, the ALJ stated with particularity the weight given to Dr. Chitty and provided the reasons therefor. Id. Accordingly, Plaintiff's enumeration of error as to the level of weight ALJ Furcolo afforded to Dr. Chitty's opinion is without merit.

### C. Nurse Practitioner Ms. Vicky Alday

Like the other expert opinions, ALJ Furcolo did not err in assigning little weight to Ms. Alday's opinion that Plaintiff is "incapable of gainful employment." (Doc. 10-2, p. 23.) Plaintiff argues that the ALJ improperly discounted Ms. Alday's opinion "simply based on the bare

15

recitation and conclusion that she was 'not an acceptable medical source.'" (Doc. 12, p. 4–5.) A review of ALJ Furcolo's decision, however, reveals several reasons the ALJ had for discounting Ms. Alday's opinion.

First, the ALJ correctly found that Ms. Alday, as a nurse practitioner, was not an acceptable medical source. (Doc. 10-2, p. 23 (citing 20 C.F.R. §§ 404.1513(a), 416.913(a); SSR 06-03p (2013)[9]).); see Clerjeaux v. Colvin, No. 15-14137-CIV, 2016 WL 7470008, at *2 (S.D. Fla. Aug. 8, 2016) (Nurse practitioners are not acceptable medical sources under the Regulations and are categorized as "other sources" for the ALJ to consider). Second, the ALJ noted Ms. Alday was not a treating provider. (Doc. 10-2, p. 23.) Lastly, the ALJ found Ms. Alday's opinion to be stale, as it was given at the initial hearing in January 2015 and did not take into account additional medical evidence of record submitted for the second hearing in November 2015. (Id.) Moreover, Ms. Alday is a friend of Plaintiff's and gave an opinion that speaks to an issue reserved for the Commissioner, (id.), which is not entitled to any special significance. 20 C.F.R. § 404.1527(d)(3); SSR 96-5p (2013). Based on these reasons, the Court finds that Plaintiff's argument as to Ms. Alday misconstrues the record and that substantial evidence supports ALJ Furcolo's weighing of Ms. Alday's opinion.

As shown above, the ALJ clearly stated his reasons for discounting the opinions of Drs. Agarwal and Chitty as well as Nurse Practitioner Alday. ALJ Furcolo gave multiple compelling reasons to discount each expert's opinion. Accordingly, his determination to give less weight to these opinions is supported by substantial evidence, and this enumeration of error is without merit.

---

[9] SSR 06-03p was rescinded in March 2017 but was in effect for Plaintiff's claim. See 82 Fed. Reg. 15263 (Mar. 27, 2017); see also 82 Fed. Reg. 5844 (Jan. 18, 2017) (expanding "acceptable medical sources" to include Licensed Advanced Practice Registered Nurses or other licensed advanced practice nurses with another title).

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 15th day of August, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA